Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MCCAFFREE FINANACIAL CORP.,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **ADP, INC.,** *et al.*, <br><br> **Defendants.** | **Civil Action No. 20-5492 (ES) (JRA)** <br><br> **OPINION** |

**SALAS, DISTRICT JUDGE**

Plaintiffs McCaffree Financial Corp. ("MFC") and Mark McCaffree (together "Plaintiffs") filed this putative class action bringing claims for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* against Defendants ADP, Inc. ("ADP"); ADP TotalSource Group, Inc. ("ADP TotalSource Group"); and the Administrative Committee of the ADP TotalSource Retirement Savings Plan (the "Committee") (together "Defendants"). (D.E. No. 96 ("Amended Complaint" or "Am. Compl.")). Before the Court is Defendants' motion to dismiss the Amended Complaint. (D.E. No. 101). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' motion is **GRANTED,** and Plaintiffs' Amended Complaint is dismissed *without prejudice*.

## I.     BACKGROUND

### A.     Factual Allegations

As alleged in the Amended Complaint, MFC is a participating employer and Mark McCaffree is a participant in a multiple-employer 401(k) defined contribution plan, called the ADP

1

TotalSource Retirement Savings Plan (the "Plan").[1]  (Am. Compl. ¶¶ 3 & 10–11).  A multiple-employer plan ("MEP") is an ERISA plan that is, among other things, "sponsored by more than one employer."  Lee T. Polk, ERISA Practice and Litigation § 2:6 (2022) (hereinafter, "Polk"). The Plan here is vast.  According to the Amended Complaint, it has over 114,000 participants, and it has accumulated assets worth over $4.4 billion.  (Am. Compl. ¶¶ 4 & 89(a)).

Defendant ADP TotalSource Group is the Plan's lead sponsor and is responsible for selecting, retaining, and monitoring the Plan's service providers and the services that they provide. (*Id.* ¶ 13).  The Trustee of the Plan is Voya National Trust Company.  (*Id.* ¶ 38).  And the Plan Administrator is the Defendant Committee, members of which are appointed by Defendant ADP TotalSource Group.  (*Id.* ¶ 15).  The Committee, as Plan Administrator, is responsible for administering the Plan.  (*Id.*).  The Committee is also the Plan's named fiduciary.  (Plan § 2.9A). ADP TotalSource Group may, "in its sole discretion," designate another person or entity as Plan Administrator.  (*Id.* § 8.1).  If ADP TotalSource Group abolishes the Committee, then ADP TotalSource Group would become the Plan's named fiduciary and the Plan Administrator.  (*Id.* § 8.8).

New employers may join the Plan without the consent of other participating employers and may negotiate amendments to the Plan that would apply only to them.  (*Id.* §§ 12.1 & 12.6). However, amendments to the Plan are effective only upon the consent of ADP TotalSource Group and the Trustee "where such consent is necessary in accordance with the terms of this Plan."  (*Id.*

---

[1]        The Court may consider the Plan as an indisputably authentic document that is explicitly relied upon and integral to the Complaint.  (D.E. No. 20-3, Ex. A, Plan § 2.35); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (cleaned up)).

§ 12.6).  An adopting employer may discontinue or revoke its participation in the Plan, and there appears to be no limitation on an adopting employer's ability to do so.  (*Id.* § 12.7).

The Plan is governed under ERISA.  Plaintiffs allege that Defendants are fiduciaries under ERISA and therefore owe fiduciary duties to the Plan.  (Am. Compl. ¶ 5).  The Amended Complaint provides that Defendants, "maintain the Plan[] and have primary responsibility for selecting, monitoring, and retaining the service provider(s) that provide investment, recordkeeping, and other administrative services."  (*Id.*).  According to Plaintiffs, Defendants breached their fiduciary duties to the Plan in several ways.

First, Plaintiffs claim that Defendants caused the Plan to pay excessive total plan costs and recordkeeping and administrative expenses.  (*Id.* ¶¶ 41–49).  More specifically, Plaintiffs allege that despite the size of the Plan and its concomitant ability to negotiate price, Defendants caused the Plan to pay total plan costs and recordkeeping and administrative expenses that were higher than those paid by other plans.  (*Id.*).

Second, Plaintiffs claim that Defendants failed to adequately monitor the Plan's recordkeeper, Voya Institutional Plan Services, LLC ("Voya Financial"), despite its clear conflicts of interest.  (*Id.* ¶¶ 7 & 37).  According to the Amended Complaint, a significant portion of the Plan has been invested in Voya[2]-managed investment options.  (*Id.* ¶ 51).  All Voya funds that the Plan offers as investment options are allegedly proprietary funds where Voya both distributes and manages the funds in which the Plan invests.  (*Id.* ¶ 52).  Plaintiffs further allege that many of the Voya proprietary funds are "funds of funds" which do not directly invest in securities.  (*Id.* ¶ 53).  Instead, a Voya investment manager selects underlying funds managed by a sub-advisor—which can be another Voya entity or a third party—through which it invests in securities.  (*Id.*).

---

[2]        According to the Amended Complaint, Plaintiffs use "Voya" to refer to Voya Financial and its affiliated entities including Voya Trust Company and Voya Investment Management.  (Am. Compl. at 18 n.12).

Accordingly, Plaintiffs claim that the Plan is required to pay multiple layers of fees to Voya as fund manager and to the sub-advisor of the underlying fund, which may be another Voya entity. (*Id.*). Further, as stated in the Amended Complaint, Voya has the right to hire and fire sub-advisors and vary the amount of assets allocated to a given sub-advisor. (*Id.* ¶ 54). As such, to the extent Voya is able to select a sub-advisor with a low sub-advisory fee, Plaintiffs allege that Voya can adjust the revenue it derives from the fund and ultimately the Plan. (*Id.*). Plaintiffs claim that this arrangement poses a conflict of interest because Voya's affiliates are sub-advisors in its investment options, and Voya will receive more revenue when it selects a Voya affiliated fund rather than an unaffiliated fund. (*Id.* ¶ 55). Lastly, Plaintiffs claim that these conflicts of interest are magnified by Defendants' retention of Voya entities, including Voya Investment Advisors, followed by Voya Retirement Advisors, LLC, as investment advisors for the Plan since these entities have a clear financial incentive to direct participants to Voya proprietary investment options. (*Id.* ¶ 56).

Third, Plaintiffs claim that Defendants caused the Plan to offer participants high-cost and poor-performing investment options. (*Id.* ¶¶ 57–80). Plaintiffs name six such investment options, including (i) the Voya Target Solution Collective Trusts; (ii) the Voya Trust Company Large Cap Growth Fund; (iii) the Voya Trust Company Large Cap Value Fund; (iv) the American Funds Washington Mutual Fund; (v) the Federated Investors Clover Small Cap Value Fund; and (vi) the American Funds EuroPacific R4 Fund. (*Id.* ¶¶ 62–80).

## B.   Procedural History

MFC initiated this action against Defendants on May 4, 2020, individually, and on behalf of the Plan, as well as similarly-situated participating employer co-sponsors and fiduciaries. (D.E. No. 1 ("Complaint" or "Compl.")). The initial complaint asserted two counts against Defendants for (i) breach of fiduciary duties; and (ii) in the alternative, liability for participation in breach of

4

fiduciary duties.  (*Id.* ¶¶ 81–88).  On July 31, 2020, Defendants moved to dismiss the Complaint arguing (among other things) that MFC did not have constitutional or statutory standing to sue.  (D.E. No. 20-1 at 11–15).  On March 31, 2022, the Court granted Defendants' motion to dismiss and dismissed the Complaint without prejudice.  (D.E. No. 91 ("March 31, 2022 Op.")).  The Court found that the Complaint failed to allege a single fact indicating that MFC is a fiduciary for purposes of establishing that it has standing.  (*Id.* at 8).  More specifically, the Court explained that MFC could not demonstrate that it had standing as a fiduciary because:

> The Complaint does [not] identify any authority or control, discretionary or otherwise, that Plaintiff has with respect to management or administration of the Plan or Plan assets.  Nor does the Complaint identify any investment advice that Plaintiff offers, directly or indirectly, with respect to Plan assets.  Nor does the Complaint allege that Plaintiff has the authority to render such advice.  Much less does the Complaint suggest that Plaintiff is a cofiduciary "with respect to" Defendants' alleged conduct giving rise to Plaintiff's claims.

(*Id.*).  Accordingly, the Court dismissed the Complaint *without prejudice* to MFC filing an amended complaint that provides a basis for its standing as a fiduciary.  (*Id.* at 15–16).  The Court noted that MFC theoretically might be able to allege that it had discretionary authority with respect to the Plan.  (*Id.*).

On May 2, 2022, MFC filed the Amended Complaint, adding Mark McCaffree, an employee of MFC and a participant in the Plan, as a Plaintiff, who asserts claims individually and on behalf of the Plan, as well as similarly-situated participants and beneficiaries of the Plan.  (Am. Compl.).  The Amended Complaint asserts the same two causes of action against Defendants as the original Complaint for (i) breach of fiduciary duties; and (ii) in the alternative, liability for participation in breach of fiduciary duties.  (*Id.* ¶¶ 92–99).  More specifically, Plaintiffs allege that Defendants breached their duties of prudence and loyalty in violation of 29 U.S.C. § 1104(a)(1)

5

by (i) subjecting the Plan to excessive total plan costs and excessive recordkeeping/administrative costs; (ii) failing to oversee the Plan recordkeeper and engaging a recordkeeper with a conflict of interest; and (iii) permitting objectively imprudent investment options.  (*Id.* ¶¶ 7 & 41–80). Further, in an attempt to cure its prior pleading, MFC alleges that it is a fiduciary under ERISA because it has the ability to adopt, amend, and discontinue its participation in the Plan and can select and monitor MEP providers.  (*Id.* ¶¶ 21–31).  Defendants again move to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and (6).  (D.E. No. 102 ("Mov. Br.")).  First, Defendants argue that MFC does not have constitutional or statutory standing to sue.  (*Id.* at 11–14).  Second, Defendants challenge Plaintiff, Mark McCaffree's, constitutional standing.  (*Id.* at 14–18).  Third, Defendants challenge the sufficiency of Plaintiffs' allegations supporting all counts.  (*Id.* at 18–37).  The motion is fully briefed.  (D.E. No. 107 ("Opp. Br."); D.E. No. 110 ("Reply")).

On September 14, 2022, the Court directed the parties to submit supplemental briefing regarding the Court's decision in *Berkelhammer v. Automatic Data Processing, Inc.*, No. 20-5696, 2022 WL 3593975 (D.N.J. Aug. 23, 2022).  (D.E. No. 113).  Like Plaintiffs in the present case, Plaintiffs in *Berkelhammer* also allege that Defendants ADP, Inc., ADP TotalSource Group, Inc., and the ADP TotalSource Retirement Savings Plan Committee breached their fiduciary duties of prudence and loyalty in their management of the ADP TotalSource Retirement Savings Plan. *Berkelhammer*, 2022 WL 3593975, at *1–3.  On August 23, 2022, this Court granted-in-part and denied-in-part Defendants' motion to dismiss in *Berkelhammer*, allowing Plaintiffs' claims for breach of the duty of prudence and loyalty, among others, to proceed as pled.  *Id.* at *4–11. Accordingly, the Court directed the parties in the present case to brief the impact, if any, of the decision in *Berkelhammer* on Defendants' pending motion to dismiss.  (D.E. No. 113).  The parties

have since submitted supplemental briefing on that issue.  (D.E. No. 115 ("Def. Supp. Br."); D.E. No. 116 ("Pl. Supp. Br."); D.E No. 117 ("Def. Supp. Reply")).

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

Under Rule 12(b)(1), a court may dismiss a claim at the pleading stage if the court does not have jurisdiction.  "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'"  *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).  Defendants raise a facial attack to Plaintiffs' constitutional standing (Mov. Br. at 8); therefore, the Court accepts Plaintiffs' factual allegations as true.  *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

While motions to dismiss for lack of standing are generally assessed under Rule 12(b)(1), motions to dismiss for lack of statutory standing under ERISA are assessed under the Rule 12(b)(6) framework because such challenges are not jurisdictional.  *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015).

### B.    Rule 12(b)(6)

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded.  *Id*. at 878–79 (quoting

*James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.   DISCUSSION

### A.   Constitutional Standing

Constitutional standing is derived from Article III's "case or controversy" requirement. *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). Constitutional standing consists of three elements.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  A plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560–61).  The first element—injury in fact—is the "'foremost' of standing's three elements." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (quoting *Spokeo*, 578 U.S. at 338).  It requires "the party invoking federal jurisdiction" to "establish three sub-elements: first, the invasion of a legally protected interest; second, that the injury is both 'concrete and particularized'; and third, that the injury is 'actual or imminent, not conjectural or hypothetical.'"  *Id.* (quoting *Spokeo*, 578 U.S. at 339).

### i.   Mark McCaffree

Defendants challenge Plaintiff Mark McCaffree's Article III standing.  (Mov. Br. at 14–18).  First, Defendants contend that McCaffree has failed to allege injury in fact with respect to his investment-related claims because he did not allege that he invested in any of the investment options that form the basis of his claim for breach of fiduciary duty.  (*Id.* at 16).  Second, Defendants argue that McCaffree has failed to allege injury in fact because he did not plead that he paid any of the challenged fees at issue in this case.  (Reply at 5).  Plaintiffs oppose and argue that McCaffree has sufficiently alleged injury in fact with respect to each of his claims.  (Opp. Br. at 16–18).  For the reasons set forth below, the Court finds that McCaffree has sufficiently alleged injury in fact with respect to his claims against Defendants for (i) subjecting the Plan to excessive total plan costs and excessive recordkeeping/administrative costs, and (ii) failing to oversee the Plan recordkeeper and engaging a recordkeeper with a conflict of interest, but has failed to allege injury in fact with respect to his claims against Defendants for (iii) permitting objectively imprudent investment options.

To demonstrate Article III standing, an ERISA plaintiff must demonstrate injury to his own plan account.  *Boley v. Universal Health Servs., Inc.*, 498 F. Supp. 3d 715, 720 (E.D. Pa. 2020).  He may show injury through "[d]iminished returns relative to available alternative investments and high fees . . . regardless of whether the plaintiff suffered an actual loss on his investment or simply realized a more modest gain."  *Id.* (alteration in original).  Alternatively, a plaintiff may satisfy this requirement by "alleging an injury to a plan's assets unrelated to specific funds, if plan participants are all assessed a portion of the injury[;]" *id.,* or where a plaintiff's claim relates to a defendant's "conduct regarding the administration of the [p]lan as a whole, not specific funds."  *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 132 (3d Cir. 2022).  Accordingly, when assessing Article III standing, "courts look to the nature of the claims and allegations to determine

whether the pleaded injury relates to the defendants' management of the [p]lan *as a whole*." *Hay v. Gucci Am., Inc.*, No. 17-7148, 2018 WL 4815558, at *4 (D.N.J. Oct. 3, 2018) (quoting *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15-1614, 2016 WL 4507117, at *4 (C.D. Cal. Aug. 5, 2016)).  Once the named ERISA plaintiffs have alleged individualized injuries with respect to all of their claims, they "may proceed under § 1132(a)(2) on behalf of the plan or other participants" even if relief "sweeps beyond [their] own injur[ies]." *Boley*, 36 F.4th at 132 (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009)).  However, "[s]tanding is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* at 131 (quoting *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)).

To determine whether McCaffree has standing, we first look to the Amended Complaint. Under Count I, Plaintiffs claim a breach of fiduciary duty and under Count II, Plaintiffs claim, in the alternative, liability for participation in breach of fiduciary duties.[3]  (Am. Compl. ¶¶ 92–99). For Count I, Plaintiffs allege three breaches of fiduciary duty: (i) Defendants' alleged imprudence in subjecting the Plan to excessive total plan costs and excessive recordkeeping/administrative costs; (ii) Defendants' alleged breach of the duty of loyalty for failing to oversee the Plan recordkeeper and engaging a recordkeeper with a conflict of interest; and (iii) Defendants' alleged imprudence in permitting objectively imprudent investment options.  (*Id.* ¶¶ 7, 41–80 & 92–96).

*First,* McCaffree has sufficiently alleged standing for Plaintiffs' duty of prudence claim regarding excessive total plan costs and recordkeeping/administrative costs.  The Amended

---

[3]     With respect to Count II, which is pled in the alternative, Plaintiffs allege that Defendants committed a breach of trust through their knowing participation in the breach.  (Am. Compl. ¶¶ 97–99).  A claim for breach of trust is "generally interchangeable with breach of fiduciary duty[,]" except that it can be asserted against non-fiduciaries. *Johnson v. PNC Fin. Servs. Grp., Inc.*, No. 20-1493, 2022 WL 973581, at *8 (W.D. Pa. Mar. 31, 2022) (internal quotations and citation omitted).  Thus, the same analysis applies to a fiduciary duty and breach-of-trust claim. *Id.; see also Garthwait v. Eversource Energy Co.*, No. 20-0902, 2021 WL 4441939, at *10–11 (D. Conn. Sept. 28, 2021).

Complaint alleges that participants were harmed by the Plan's excessive total plan costs which were significantly above the market average for plans with over $1 billion in assets.  (*Id.* ¶¶ 41–42).  The Amended Complaint further alleges that Plan participants were harmed by excessive recordkeeping fees of $79.76 to $124.28 *per participant* from 2014 to 2018.  (*Id.* ¶ 45).  Plaintiffs further plead that participants incurred excessive administrative fees, which alone were higher than the average total plan costs of similarly sized plans.  (*Id.* ¶¶ 46–47).  The Amended Complaint also alleges that Defendants failed to use the size of the Plan to leverage lower, reasonable fees.  (*Id.* ¶ 44).  While Defendants contend that McCaffree has not pled that he paid the at issue per-participant fees (Reply at 5), according to the Amended Complaint, based upon the plan's design "participants in the Plan pay virtually all of the excessive fees" which has a "damaging impact upon the returns attained by participant retirement savings."  (Am. Compl. ¶ 48; *id.* ¶ 19 ("The Plan pays Plan expenses from Plan assets, and substantially all administrative expenses are paid by participants as a reduction of investment income. Each participant's account is charged with the amount of distributions taken and an allocation of administrative expenses.")).  Further, the Amended Complaint pleads that the plan and its participants "were being charged much higher fees than they should have been."  (*Id.* ¶ 49).  As these allegations demonstrate, this claim does not involve a specific fund.  It pleads plan-wide injury that affects all participants through their payment of a portion of these costs/fees.  *Boley*, 498 F. Supp. 3d at 723.  As such, McCaffree has standing to pursue this claim.  *Boley*, 36 F.4th at 131; *Cassell v. Vanderbilt Univ.*, No. 16-2086, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018) (finding that Plaintiffs alleged injury in fact where "Plaintiffs' allegations concerning record-keeping and administrative fees challenge[d] the practices of [d]efendants, not specific funds."); *Garthwait*, 2021 WL 4441939, at *7.

*Second,* McCaffree has sufficiently alleged standing for Plaintiffs' duty of loyalty claim regarding Defendants' failure to oversee the Plan recordkeeper.[4]  On the one hand, the Amended Complaint alleges that Voya Financial had a conflict of interest because at the same time it was engaged as recordkeeper other Voya entities were extracting more fees in their capacity as investment managers to the Plan through Voya-managed investment options.  (Am. Compl. ¶¶ 51–54).  Nevertheless, as with Plaintiffs' first claim, this claim relates to Defendants' conduct rather than specific funds, and thus injures all Plan participants, including McCaffree.  For example, the Amended Complaint alleges that Defendants "failed to adequately monitor the Plan's recordkeeper and its affiliates, who the ADP Defendants have permitted to design an investment menu unreasonably favorable to them despite the recordkeeper's clear conflicts of interest."  (*Id.* ¶¶ 7 & 50).  It further pleads that Voya's conflicts of interest were magnified by Defendants' retention of Voya entities, including Voya Investment Advisors, followed by Voya Retirement Advisors, LLC, as investment advisors for the Plan's participants because these entities had a clear financial incentive to direct participants to Voya proprietary investment options.  (*Id.* ¶ 56).  Accordingly, because this claim relates to Defendants' conduct in mismanaging the Plan as a whole—its failure to oversee the Plan recordkeeper and engaging a recordkeeper with a conflict of interest—McCaffree alleges injury with respect to this claim.  *Boley*, 36 F.4th at 132; *Boley*, 498 F. Supp. 3d at 723–24; *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577–78 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363 (7th Cir. Sept. 21, 2022) (finding there was no serious dispute that

---

[4]     Defendants' challenge to McCaffree's standing appears to be focused on McCaffree's claim regarding Defendants' imprudent investment options.  (Mov. Br. at 16 ("[W]here a plaintiff alleges that fiduciaries breached ERISA's *duty of prudence* as to multiple investment options . . . .") (emphasis added)).  Nevertheless, in challenging McCaffree's standing, Defendants cite to allegations in the Amended Complaint regarding Defendants' failure to oversee the Plan recordkeeper.  (*Id.* at 15 (citing Am. Compl. ¶ 50)).  And Plaintiffs reference their claim for breach of the duty of loyalty when discussing Defendants' motion attacking McCaffree's standing.  (Pl. Supp. Br. at 4 n.2).  Accordingly, the Court will briefly assess McCaffree's standing with respect to this claim.

plaintiff had standing to pursue duty of loyalty claim which seemingly affects all participants in the plan).

    *Third,* McCaffree has failed to sufficiently allege standing for Plaintiffs' claim regarding Defendants' imprudent investment options.  In *Boley*, the Third Circuit found that participants in a defined contribution plan had standing to bring a claim against plan fiduciaries to challenge imprudent investment options in part where the named plaintiffs alleged that they had invested in *at least one* of the challenged funds.  *Boley*, 36 F.4th at 131–32.  Here, McCaffree has not done so.  With respect to Defendants' imprudent investment options, the Amended Complaint alleges that "[m]any of the Plan's investment options are objectively imprudent."  (Am. Compl. ¶ 57).  It further pleads that "16 of the 28 investment options that Defendants selected for the Plan during the Class Period" underperformed in comparison to their benchmarks.  (*Id.* ¶ 60).  The Amended Complaint then advances allegations related to six specific investment options: (i) the Voya Target Solution Collective Trusts; (ii) the Voya Trust Company Large Cap Growth Fund; (iii) the Voya Trust Company Large Cap Value Fund; (iv) the American Funds Washington Mutual Fund; (v) the Federated Investors Clover Small Cap Value Fund; and (vi) the American Funds EuroPacific R4 Fund.  (*See id.* ¶¶ 62–80).  The Amended Complaint alleges that the Voya Target Solution Collective Trusts, the Voya Trust Company Large Cap Growth Fund, the Voya Large Cap Value Fund, and the Federated Investors Clover Small Cap Value Fund underperformed compared to their benchmarks.  (*See id.* ¶¶ 62–72 & 76–78).  It further alleges that the American Funds Washington Mutual Fund should never have been added to the Plan because it had demonstrated a consistent inability to beat its benchmark at the time of its selection.  (*See id.* ¶¶ 73–75).  Finally, with respect to the American Funds EuroPacific R4 Fund, it alleges that Defendants selected a

share class for the Plan that was more expensive than three cheaper available alternatives.  (*See id.* ¶¶ 79–80).

However, the Amended Complaint provides no information suggesting that McCaffree invested in *any* of the challenged investment options.  (*See generally id.*).  In fact, the Amended Complaint contains no details as to McCaffree's specific investments.  Further, the Amended Complaint makes claims about the performance of specific investments, not mismanagement of the Plan as a whole.  (*See, e.g.*, *id.* ¶ 60 ("16 of the 28 investment options that Defendants selected for the Plan during the Class Period . . . . could not consistently provide returns above their benchmarks . . . ."); *id.* ("[T]hese investment options could not and cannot be justified by their risk or the fees paid to the funds' investment advisors, and were thus imprudently selected . . . ."); *see also id.* ¶¶ 62–80).  Accordingly, because McCaffree has not alleged that he invested in at least one of the challenged investment options, the Court cannot conclude that there is adequate injury in fact to support McCaffree's standing as to his claim regarding Defendants' imprudent investments.  *Boley*, 36 F.4th at 131; *Garthwait*, 2021 WL 4441939, at *7 (finding that plaintiffs failed to allege standing with regard to claims related to the management, retention and performance of specific funds where "[p]laintiffs have made no allegations whatsoever regarding their ownership of the funds at issue in the case."); *In re LinkedIn ERISA Litig.*, No. 20-5704, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021) (finding that the plaintiffs had not demonstrated Article III standing with respect to claims for imprudent investments where "none of the [p]laintiffs have alleged that they personally invested in the Freedom Active Suite or the AMCAP Fund—in fact, there is no information in the complaint about any of the [p]laintiffs' investments.").

Plaintiffs' arguments to the contrary are unavailing.  Plaintiffs argue that the Amended Complaint does not plead individual breaches of fiduciary duty but rather broader failures by

Defendants affecting multiple funds in the same way. (Opp. Br. at 17). More specifically, Plaintiffs contend that they plead that Defendants selected or ratified investments made available to Plan participants and, because McCaffree was a participant with a balance in the Plan, he was subject to the same injuries as all Plan participants, including being subject to excessive investment management fees and investment losses. (*Id.* at 17–18). However, as noted above, the Amended Complaint complains about specific investment options, not mismanagement of the Plan as a whole and the Amended Complaint contains no details as to McCaffree's specific investments. (*See, e.g.*, Am. Compl. ¶¶ 57–80).[5]

Further, Plaintiffs argue that because McCaffree pled loss with respect to his claim challenging the total plan costs and excessive recordkeeping/administrative costs, he may assert claims that "sweep more broadly than the injury he personally suffered" because "Article III does not prevent the Named Plaintiffs from representing parties who invested in funds that were allegedly imprudent due to the same decisions or courses of conduct." (Opp. Br. at 17 (first quoting *Braden*, 588 F.3d at 592; then quoting *Boley*, 36 F.4th at 132)). While it is true that once an ERISA plaintiff has alleged injury to his own account, he "may seek relief under § 1132(a)(2) that sweeps beyond his own injury," *Braden*, 588 F.3d at 593, a plaintiff must still "demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Boley*, 36 F.4th at 131 (quoting *Town of Chester*, 581 U.S. at 439); *id.* at 132 (noting that the Eighth Circuit in *Braden*,

---

[5]     Plaintiffs' cited case law does not compel a contrary conclusion. (Opp. Br. at 18). Plaintiffs first cite to *Hay*, 2018 WL 4815558, at *4, to support their assertion that McCaffree has standing with respect to their imprudent investment claim. Though the decision in *Hay* does not explicitly state that the plaintiff had invested in some of the challenged funds in that case, the alleged mismanagement of her retirement plan was rooted in the defendants' overall management of the funds as a group. *Id.* Likewise, in *Urakhchin*, "the non-speculative harm [p]laintiffs allegedly suffered relate[d] to the [d]efendants' [p]lan management and fund selection process as a whole" and plaintiffs had invested in certain funds within the plan. *Urakhchin*, 2016 WL 4507117, at *4–5. As already noted, here, the Amended Complaint complains about the performance of specific investments and there are no allegations that McCaffree invested in any of the challenged funds. (Am. Compl. ¶¶ 62–80). Further, in *Sacerdote v. New York Univ.*, No. 16-6284, 2018 WL 840364, at *7 (S.D.N.Y. Feb. 13, 2018), the named plaintiffs had invested in the challenged funds. Accordingly, these cases are inapposite.

588 F.3d at 593, stated that "as long as the named plaintiffs have alleged individualized injuries with respect to *all of their claims*, they 'may proceed under § 1132(a)(2) on behalf of the plan or other participants' even if relief 'sweeps beyond [their] own injur[ies]'" (emphasis added)). Accordingly, even though McCaffree has standing to pursue his claim regarding the excessive total plan costs and excessive recordkeeping/administrative costs, this does not mean he can seek relief with respect to Defendants' imprudent investment options without demonstrating standing as to that claim. *Boley*, 36 F.4th at 131–32; *Garthwait*, 2021 WL 4441939, at *7 (finding that though the plaintiffs had standing to assert recordkeeping fee claims, they did not have standing to bring claims related to the management, retention, and performance of specific funds or the excessive management fees attached to specific funds because "[p]laintiffs have made no allegations whatsoever regarding their ownership of the funds at issue in the case"); *Barrett v. Pioneer Nat. Res. USA, Inc.*, No. 17-1579, 2018 WL 3209108, at *3–4 (D. Colo. June 29, 2018) (finding that though the plaintiff had standing to assert excessive fee claims, the plaintiff did not have standing to bring a claim based on an imprudent investment in which plaintiff had never invested since the complaint did not allege mismanagement of all of the available investment options). As such, Plaintiffs' argument is unavailing.

Having failed to sufficiently plead constitutional standing, McCaffree's claim regarding Defendants' imprudent investment options (Am. Compl. ¶¶ 57–80) is **DISMISSED** *without prejudice* to McCaffree filing an amended complaint that provides a basis for his standing as to this claim.

### ii.   MFC

Defendants argue that MFC's claims should be dismissed because it is not a fiduciary and does not have constitutional standing to pursue the claims asserted.  (Mov. Br. at 11).  Plaintiffs

assert that MFC has constitutional standing because as a co-fiduciary, it is at risk of being sued under ERISA for Defendants' unlawful conduct.  (Opp. Br. at 13).

As the Court acknowledged in its March 31, 2022 Opinion, Plaintiffs are correct that a co-fiduciary may be sued under ERISA under certain circumstances.  (March 31, 2022 Op. at 5 (citing 29 U.S.C. § 1105)).  And some courts, albeit in other contexts, have held that the risk of liability is sufficient to confer Article III standing.  *See, e.g.*, *Choirock Contents Factory Co. v. Saucier*, 801 F. App'x 754, 762 (Fed. Cir. 2020).  However, as this Court previously noted (March 31, 2022 Op. at 5), the term "fiduciary" bears a legal meaning.  *See Glaziers & Glassworkers Union Loc. No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1179 (3d Cir. 1996); *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 291 (3d Cir. 2014).  And as is in the original Complaint, MFC does not plead in its Amended Complaint any facts suggesting that it could actually be held liable as a co-fiduciary.  MFC does not allege, for example, how a future plaintiff could reasonably plead that MFC was a co-fiduciary "with respect to" the unlawful conduct allegedly committed by Defendants.  (*See generally* Am. Compl.); *See Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011)).  However, whether MFC adequately alleged that it is a fiduciary significantly overlaps with its statutory standing.  Accordingly, the Court will more fully address MFC's statutory standing below.[6]

### B.    Statutory Standing

Defendants argue that MFC's claims should be dismissed because it lacks statutory standing to sue as a fiduciary under ERISA.  (Mov. Br. at 14).  More specifically, Defendants argue that like the original Complaint, the Amended Complaint fails to identify any facts showing

---

[6]    As the Court noted in its March 31, 2022 Opinion the Supreme Court in *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615 (2020), made two observations that are potentially relevant to a fiduciary's constitutional standing to sue— suggesting that, at least in this context, MFC's constitutional standing turns on its statutory standing as a fiduciary. (March 31, 2022 Op. at 6 n.2).

that MFC had authority or control, discretionary or otherwise, with respect to the management or administration of the Plan or Plan assets such that MFC could be considered a fiduciary with statutory standing to pursue the claims asserted.  (*Id.* at 12).  Defendants further assert that MFC pleads nothing to show that it was a fiduciary with respect to the alleged conduct giving rise to Plaintiffs' claims.  (*Id.*).  Plaintiffs oppose, arguing that the Amended Complaint adequately pleads MFC's statutory standing because MFC bears fiduciary responsibility for monitoring ADP's administration of the plan, retains discretion to direct Plan assets to another plan or trustee, and has the authority to adopt, amend, and terminate the Plan.  (Opp. Br. at 13–16).  Defendants assert that the Court already considered and rejected the assertion that these roles are sufficient to confer statutory standing on MFC as a fiduciary.  (Mov. Br. at 13; Reply at 3–4).  For the reasons set forth below, the Court agrees with Defendants: the Amended Complaint does not cure the deficiencies in the original Complaint regarding MFC's failure to allege its status as a fiduciary.  And because MFC does not allege that it is a fiduciary, it fails to allege that it has statutory or constitutional standing.

Under ERISA, a "participant, beneficiary or fiduciary" may bring a civil action for appropriate relief against a plan fiduciary for breach of fiduciary duty.  *See* 29 U.S.C. §§ 1104, 1105, 1109 & 1132(a)(2).  As noted, Plaintiffs claim MFC may sue as a fiduciary of the Plan. (Am. Compl. ¶¶ 1, 10, 21–30 & 89(c)).

A person or entity may be a fiduciary in one of three ways: (i) "being named as the fiduciary in the instrument establishing the employee benefit plan"; (ii) "being named as a fiduciary pursuant to a procedure specified in the plan instrument"; and (iii) "being a fiduciary under the provisions of 29 U.S.C. § 1002(21)(A)."  *Glaziers*, 93 F.3d at 1179; *see also John Hancock*, 768 F.3d at 291.

Here Plaintiffs do not allege that the Plan identifies MFC as a fiduciary. (*See generally* Am. Compl.). And as the Court noted in its March 31, 2022 Opinion, such an allegation would be inconsistent with the clear terms of the Plan, which identifies the Committee as the named fiduciary. (March 31, 2022 Op. at 6–7). Moreover, Plaintiffs do not allege that MFC was named as a fiduciary pursuant to a procedure in the Plan. (*See generally* Am. Compl.).

Thus, the Court must assess whether the Amended Complaint plausibly alleges that MFC meets the criteria for a fiduciary set out in 29 U.S.C. § 1002(21)(A), including that:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
>
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
>
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). Section 1002(21)(A), the Supreme Court has said, defines the term fiduciary "in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). This functional definition "is contextual," in that a person is a fiduciary "'only to the extent' [the] person acts in an administrative, managerial, or advisory capacity to an employee benefits plan." *John Hancock*, 768 F.3d at 291 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000)). Thus, a court must ask "whether [the person] is a fiduciary with respect to the *particular activity in question.*" *Id.* (quoting *Renfro*, 671 F.3d at 321) (internal citations omitted). "Whether an employer who is also an ERISA plan sponsor is a fiduciary of the plan generally requires a detailed analysis of the employer's actions and whether those actions were performed in the employer's fiduciary capacity." *Cob Clearinghouse Corp. v. Aetna U.S.*

*Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004).  Indeed, "[t]he mere fact that an employer is

a sponsor does not mean that the employer is also a fiduciary."  *Healthtek Sols., Inc. v. Fortis*

*Benefits Ins. Co.*, 274 F. Supp. 2d 767, 775 (E.D. Va. 2003).  Fiduciary status under ERISA is not

merely a title, but a conclusion based on facts.  29 U.S.C. § 1102(21)(A); *In re Unisys Corp.*

*Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009); *Hozier v. Midwest*

*Fasteners, Inc.*, 908 F.2d 1155, 1158–59 (3d Cir. 1990).

Like the original Complaint, the Amended Complaint does not plausibly allege that MFC

is a fiduciary under any of § 1002(21)(A)'s three subsections.  The Amended Complaint does not

identify any authority or control, discretionary or otherwise, that MFC has with respect to

management or administration of the Plan or Plan assets.  (*See generally* Am. Compl.).  Nor does

the Amended Complaint identify any investment advice that MFC offers, directly or indirectly,

with respect to Plan assets—the Amended Complaint does not even allege that MFC has the

authority to render such advice.[7]  (*See generally* Am. Compl.).  Much less does the Amended

Complaint suggest that MFC is a cofiduciary "with respect to" Defendants' alleged conduct giving

rise to MFC's claims.  *See Renfro*, 671 F.3d at 324.  According to Plaintiffs, Defendants breached

their fiduciary duties by subjecting the Plan to excessive total plan costs and excessive

recordkeeping/administrative costs, by failing to oversee the Plan recordkeeper and engaging a

recordkeeper with a conflict of interest, and by permitting objectively imprudent investment

options.  (Am. Compl. ¶¶ 40–80).  While the Amended Complaint alleges that MFC monitored

ADP, including the reasonableness of fees and investments (*id.* ¶ 31), it does not identify what

---

[7]     Nor does the Amended Complaint allege that the instrument under which the Plan is maintained provides that the named fiduciaries designated MFC to carry out fiduciary responsibilities under the Plan pursuant to 29 U.S.C. § 1105(c)(1)(B).  (*See generally* Am. Compl.).  29 U.S.C. § 1002(21)(A) ("[A] person is a fiduciary with respect to a plan to the extent . . . (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.  Such term *includes any person designated under section 1105(c)(1)(B) of this title*." (emphasis added)).

authority or control MFC had with respect to those actions taken by Defendants.  Indeed, the Amended Complaint does not suggest that MFC has any authority, control, or oversight duties with respect to setting or negotiating total plan costs or recordkeeping/administrative costs, appointing or terminating the recordkeeper or trustee, or advising or setting investment options. (*See generally* Am. Compl.).  Moreover, as the Court noted in its March 31, 2022 Opinion, the Court did not glean any such responsibilities pursuant to the terms of the Plan.  (March 31, 2022 Op. at 9).

Further, as the Court noted in its March 31, 2022 Opinion, the terms of the Plan suggest that MFC has no authority over the Plan's named fiduciary, the Plan Administrator, or the Plan Trustee.  (*Id.* (citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996))). Accordingly, based on the absence of allegations in the Amended Complaint suggesting that MFC is a fiduciary, and based on the terms of the Plan suggesting that MFC is not a fiduciary, Plaintiffs fail to plausibly plead that MFC is a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A). For that reason, MFC has neither statutory standing as a fiduciary nor constitutional standing. Plaintiffs' arguments in opposition are not persuasive.

*First***,** Plaintiffs contend that the Amended Complaint squarely addresses the Court's concern regarding whether MFC is a fiduciary because the Amended Complaint sets forth allegations concerning (i) the options available to an employer seeking to co-sponsor a multiple-employer plan for its employees and the factors informing an employer's choice of a particular multiple-employer plan; (ii) the provisions of the Plan document by which participating employers may adopt and amend the Plan; (iii) the right of participating employers to terminate their participation in the Plan and direct the assets allocable to their participants and beneficiaries to a different trustee or plan without restriction; and (iv) MFC's ongoing decision to continue

participating in the Plan.  (Opp. Br. at 14 (citing Am. Compl. ¶¶ 20–22 & 24–30)).  However, as the Court stated in its March 31, 2022 Opinion, an employer acts not as a fiduciary, but more akin to the settlor of a trust when it adopts, amends, modifies, or terminates an ERISA plan—whether it does so at any time or for whatever reason.  (March 31, 2022 Op. at 10); *see Ash v. Heat & Frost Insulators & Allied Workers Loc. No. 23 Pension Fund*, No. 16-0539, 2017 WL 4284346, at *3 (M.D. Pa. Sept. 27, 2017) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *Leuthner v. Blue Cross & Blue Shield of Ne. Pa.*, 454 F.3d 120, 127 (3d Cir. 2006); *Walling v. Brady*, 125 F.3d 114, 117 (3d Cir. 1997)); *see also Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007) ("It is well established . . . that an employer's decision whether to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations."); *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 719 (6th Cir. 2000) (stating that the transfer of assets from one plan to another was not a decision subject to ERISA's fiduciary obligations); *Sys. Council EM-3, Int'l Bhd. of Elec. Workers, AFL-CIO v. AT & T*, 972 F. Supp. 21, 32 (D.D.C. 1997), *aff'd sub nom. Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376 (D.C. Cir. 1998).

Plaintiffs again insist that the above-stated rule—that adopting, amending, and terminating an ERISA plan is a settlor, not fiduciary, function—applies only to single-employer plans and does not apply to multiple-employer plans such as the one at issue here.  (Opp. Br. at 14 & 16).  They contend that the case law Defendants cite to support their assertion that adopting, amending, and terminating an ERISA plan is a settlor function were made in the context of single-employer plans.  (*Id.* at 16 (citing *Lockheed Corp.*, 517 U.S. at 885)).  And Plaintiffs point out that their Amended Complaint specifically pleads that the rights of an employer to adopt, amend, and terminate a plan are different in the multiple-employer context than in the single-employer context.  (*Id.* at 14 (citing Am. Compl. ¶¶ 27–30)).  The Third Circuit has held, with respect to a different category of

multiemployer plans,[8] that the rule that adopting, amending, and terminating an ERISA plan is a settlor function often "applies to both single-employer sponsors and multi-employer sponsors under ERISA," for the foundational Supreme Court decision on this issue "lacks any hint that single- and multi-employer plans should be analyzed differently." *Walling*, 125 F.3d at 117. Yet, as the Court noted in its March 31, 2022 Opinion, there may be instances where a court should distinguish between the different types of plans at issue. (March 31, 2022 Op. at 11). However, at least with respect to multiemployer plans, the Third Circuit has stated that "where there is no material difference between the way a multiemployer plan and a single employer plan are administered, 'the simple fact that the plan at issue is a multiemployer plan is insufficient' to alter the fiduciary duties of the administrator." *See Mushalla v. Teamsters Loc. No. 863 Pension Fund*, 300 F.3d 391, 397 (3d Cir. 2002) (quoting *Walling*, 125 F.3d at 118). Applying this principle here, the Amended Complaint does not identify a material difference between the way Plaintiffs' multiple-employer plan and a single-employer plan are administered such that the duties of a fiduciary are altered. Rather, it merely states that the rights of an employer to terminate a plan are different in the multiple-employer context than in the single-employer context, because "[t]he ongoing decision to continue participation in a particular [multiple-employer plan] involves determinations by the participating employer that the particular [multiple-employer plan] in which they have decided to elect participation on behalf of their employees remains a suitable choice . . . because there are numerous other [multiple-employer plans] that may be suitable." (Am. Compl.

---

[8]         A "multiemployer plan" is different from a "multiple-employer" plan, at issue here. A multiemployer plan is specifically defined under ERISA as involving, among other things, "one or more collective bargaining agreements between one or more employee organizations and more than one employer." 29 U.S.C. § 1002(37)(A). On the other hand, "a noncollectively bargained plan to which several unrelated employers contribute is an example of a multiple-employer plan," such as the one at issue here. *See* Polk § 2:6. New employers may join the Plan without the consent or agreement of other participating employers and may negotiate amendments to the Plan that would apply only to them. (Plan §§ 12.1 & 12.6).

¶ 27); *Walling*, 125 F.3d at 120.  Accordingly, there is no apparent reason to treat Plaintiffs' multiple-employer plan differently.

Further, the Court finds that the Supreme Court's decisions in *Lockheed* and *Hughes* are instructive in addressing Plaintiffs' argument.  In *Lockheed*, the Supreme Court stated that in the context of single-employer plans, when employers adopt, modify, or terminate welfare plans, they do not act as fiduciaries, but are analogous to the settlors of a trust.  *Lockheed Corp.*, 517 U.S. at 890.  In *Hughes*, the Supreme Court again stated that a plan sponsor's decision to amend a plan does not implicate ERISA's fiduciary obligations.  *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 444 (1999).  *Hughes* further explained that the prior holding in *Lockheed* does not turn on "the type of plan being amended for the simple reason that the plain language of the statute defining fiduciary makes no distinction."  *Id.*  The *Hughes* Court emphasized that its conclusion "applies with equal force to persons exercising authority over a contributory plan, a noncontributory plan, or *any other type of plan*."  *Id.* at 443–44 (emphasis added).

While *Hughes* arose in the context of a single-employer benefit plan, other courts in this Circuit have acknowledged that it may "undermine the notion that the type of plan at issue informs the decision of whether a plan sponsor acts as a fiduciary" at least in the context of undertaking a plan amendment.  *Saxton v. Cent. Pa. Teamsters Pension Fund*, No. 02-0986, 2003 WL 22952101, at *9 (E.D. Pa. Dec. 9, 2003).  As the court in *Saxton* noted, the Supreme Court's textual approach in *Hughes* places emphasis on ERISA's definition of a fiduciary.  *Id.*  "Because the term fails to distinguish between various plan permutations, and because it fails to include plan design as a defined function, a plan sponsor is free to amend any employee benefit plan without being[] subject to fiduciary review."  *Id.*  Further, though the Court in *Saxton* noted that while an "argument can be made that specific plan features should inform the fiduciary inquiry, . . . . the critical inquiry

24

lies in determining whether the plan sponsors exercised discretionary authority or control over plan management or administration." *Id.* at *9 n.10. Here, as noted above, the Amended Complaint does not identify any authority or control, discretionary or otherwise, that MFC has with respect to management or administration of the Plan or Plan assets. Accordingly, applying these principles together, the Court declines to recognize that adopting, amending, and terminating an ERISA plan is a fiduciary function in the context of Plaintiffs' multiple-employer plan. *See, e.g.*, *Saxton*, 2003 WL 22952101, at *9; *Ash*, 2017 WL 4284346, at *3 ("An employer or plan sponsor is permitted to adopt, modify, or terminate welfare plans at any time and for any reason without falling into the category of fiduciaries" and this "principle applies with equal force to multiemployer plans"); *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 261 (S.D.N.Y. 2011) (finding that creation of multiple-employer death benefit plan and modification of plan's structure did not constitute fiduciary functions).[9]

*Second*, Plaintiffs argue that MFC has standing as a fiduciary because the Amended Complaint pleads that MFC can select and monitor Defendants' administration of the plan, which are "akin to functions (*e.g.*, selecting and retaining service providers) that courts routinely find to be fiduciary functions." (Opp. Br. at 13–14 (citing *John Hancock*, 768 F.3d at 293); Am. Compl. ¶¶ 29–31). The Court finds that these allegations are insufficient to confer standing on MFC as a fiduciary. In support of their argument Plaintiffs cite to *John Hancock*, 768 F.3d at 293. Plaintiffs' reliance on *John Hancock*, however, is unavailing. As the Court noted in its March 31, 2022

---

[9] In arguing that the decision to initiate and monitor a plan is different in the multiple-employer context and should be considered a fiduciary function, Plaintiffs again cite to the preamble of a Department of Labor ("DOL") regulation concerning multiple-employer plans which states "employers exercise a fiduciary duty in choosing to begin and continue participating in a [multiple-employer plan] and should exercise appropriate care, prudence, and loyalty to ensure that the [multiple-employer plan] is sponsored and operated by high quality, reputable providers.'" (Am. Compl. ¶ 28. (quoting 84 Fed. Reg. at 37,538) & Opp. Br. at 15 n.4). In its March 31, 2022 Opinion the Court explained why the DOL preamble is not entitled to any deference (March 31, 2022 Op. at 11–14), and Plaintiffs do not provide any explanation as to why the Court should reach a different conclusion with respect to the preamble now. (*See* Opp. Br. at 13–16).

Opinion, *John Hancock* discussed the discretionary authority of a trustee to "decide[] whether to agree to the service provider's terms" after engaging in "negotiat[ion] at arm's length over the terms of their agreement."  *John Hancock*, 768 F.3d at 293.  Like the original Complaint, the Amended Complaint provides no basis to consider MFC as the functional equivalent of a trustee and provides no allegations concerning MFC's authority to negotiate and choose the terms of the service-provider agreement.  (*See generally* Am. Compl.).  And as the Court already addressed in its March 31, 2022 Opinion, such an argument would be "contrary to the terms of the Plan, which appoints the Committee as Plan Administrator and named fiduciary with responsibility for the hiring and monitoring of the Plan's service providers."  (March 31, 2022 Op. at 14–15).  In fact, MFC has no such authority because each of the Plan's adopting employers "'irrevocably' designates ADP TotalSource as its agent 'with respect to all of its relations with the Trustee and Plan Administrator for the purpose of this Plan.'"  (*Id.* at 15 (citing Plan § 12.3)).

Plaintiffs further argue that MFC has standing as a fiduciary because the Amended Complaint pleads that MFC can monitor Defendants' administration of the plan, which is a fiduciary function.  (Opp. Br. at 13–14 (citing *John Hancock*, 768 F.3d at 293)).  More specifically, Plaintiffs allege that MFC's ability to monitor the investments and service provider arrangements selected by Defendants allows them to determine whether it is appropriate to discontinue participation in the plan or assert claims on behalf of the plan.  (Am. Compl. ¶ 29).  However, in *John Hancock*, with respect to monitoring the plan, the Court found that John Hancock did not become a fiduciary by monitoring the performance of investment options because it did "not see how monitoring the performance of the funds that it offers and relaying that information to the trustees, who retain ultimate authority for selecting the funds to be included on the Small Menus, gives John Hancock discretionary control over anything, much less management of the Plans."

*John Hancock*, 768 F.3d at 296.  Like in *John Hancock*, the Court fails to see how MFC has discretionary control over anything, much less management of the Plan.[10]

Having failed to sufficiently plead constitutional and statutory standing, MFC's claims are dismissed *without prejudice*.  The Court will permit Plaintiffs one final opportunity to amend their pleadings as to MFC to plausibly allege that it is a fiduciary.

The Court will now address the sufficiency of McCaffree's remaining allegations that Defendants breached their duties of prudence and loyalty in violation of 29 U.S.C. § 1104(a)(1) by (i) subjecting the Plan to excessive total plan costs and excessive recordkeeping/administrative costs; and (ii) failing to oversee the Plan recordkeeper and engaging a recordkeeper with a conflict of interest.  Because the Court finds that neither McCaffree nor MFC have standing to pursue their claim regarding Defendants' imprudent investment options (Am. Compl. ¶¶ 57–80), the Court will not address the sufficiency of the allegations with respect to this claim.

### C.      Breach of Fiduciary Duties

A claim for fiduciary breach has three elements: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007), *as amended* (Dec. 21, 2007).  With respect to the second element, which is the central dispute for McCaffree's claims, ERISA imposes a duty of loyalty, *see* § 1104(a)(1)(A), and a duty of prudence, *see* § 1104(a)(1)(B).  The Court will address each claim in turn.

---

[10]      Plaintiffs also argue that the Amended Complaint pleads the similarities between multiple-employer plans and pooled employer plans, in which context it is well established that participating employers retain fiduciary responsibility for selecting and monitoring the pooled employer provider.  (Opp. Br. at 15 (citing Am. Compl. ¶ 28 n.6)).  As support, Plaintiffs again cite to *John Hancock* to argue that selecting and retaining service providers is a fiduciary function which, as discussed, is unavailing.  Plaintiffs also cite to a provision in a Department of Labor booklet which provides that "[h]iring a service provider in and of itself is a fiduciary function."  Emp. Benefits Sec. Admin., U.S. Dep't of Lab., Meeting Your Fiduciary Responsibilities 5 (2017) (hereinafter DOL Booklet), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.  However, this very booklet says "[i]t provides a simplified explanation of the law and regulations" and "is not a legal interpretation of ERISA." *Id.* at 1.  As such, the DOL Booklet's statements on fiduciary duties do not compel the Court to find that MFC has adequately asserted its statutory standing as a fiduciary.

### i.    Breach of Duty of Prudence

The Amended Complaint alleges that Defendants breached their duty of prudence by subjecting the Plan to excessive recordkeeping/administrative costs and excessive total plan costs. (Am. Compl. ¶¶ 7 & 40–49). Defendants argue that the Amended Complaint fails to state a claim for breach of the duty of prudence based on excessive recordkeeping/administrative costs and total plan costs, because (among other things) the Amended Complaint says nothing about the services the Plan receives from its recordkeeper relative to those rendered by comparator plans. (Mov. Br. at 21–22). McCaffree opposes, arguing that the Amended Complaint sets forth comprehensive allegations of Defendants' failure to understand and monitor Plan expenses. (Opp. Br. at 22). For the reasons set forth below, the Court agrees with Defendants.

ERISA fiduciaries are held to the "prudent man" standard of care, which requires fiduciaries to exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "It is not enough to avoid misconduct, kickback schemes, and bad-faith dealings. The law expects more than good intentions. '[A] pure heart and an empty head are not enough.'" *Sweda v. Univ. of Pa.*, 923 F.3d 320, 329 (3d Cir. 2019) (alteration in original) (quoting *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007)). In assessing this duty, a court must look at the process rather than the results. *Id.* Hindsight indeed is 20/20, so the focus must be "on a fiduciary's conduct in arriving at [a] . . . decision." *Id.* (alteration in original) (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996)). A court should ask "whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular [course of action]." *Id.* (quoting *Unisys*, 74 F.3d at 434). At the pleading stage, however, factual allegations do not have

to "directly address[] the process by which the [p]lan was managed." *Braden*, 588 F.3d at 596.  A plaintiff's allegations are sufficient if a court can reasonably infer that "the process was flawed." *Renfro*, 671 F.3d at 327 (quoting *Braden*, 588 F.3d at 596).  Such allegations may include the "reasonableness of fees" and "practices of similarly situated fiduciaries." *Sweda*, 923 F.2d at 331.  "Because the content of the duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts, § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific" and "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022) (internal quotation omitted).

Encompassed within the duty of prudence is that fiduciaries must "understand and monitor plan expenses." *Sweda*, 923 F.3d at 328.  "'Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan,' by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees." *Id.* (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015)).  Accordingly, "fiduciaries should be vigilant in 'negotiation of the specific formula and methodology' by which fee payments such as 'revenue sharing will be credited to the plan and paid back to the plan or to plan service providers.'" *Id.* (quoting DOL Advisory Opinion 2013-03A, 2013 WL 3546834, at *4).

In *Sweda*, the Third Circuit held that the plaintiffs plausibly alleged a breach of the duty of prudence regarding excessive administrative and recordkeeping fees, where plaintiffs alleged that (i) the plan paid fees that were higher than those paid by similar plans for the same services; (ii) fees went up as assets grew despite there being no corresponding increase in services; (iii) the defendants failed to negotiate a cap on fees or solicit competitive bids for recordkeeping fees,

despite the fact that similarly situated fiduciaries had taken such actions; and (iv) the defendants failed to review plan management and leverage the plan's size to obtain lower fees or rebates. *Id.* at 330–31.  The Third Circuit found these allegations sufficient because plaintiffs provided "specific comparisons" to show that the "practices of similarly situated fiduciaries" for the "same services" differed. *Id.* at 330–32.  In keeping with that decision, courts in this Circuit evaluating a claim for excessive fees will consider whether the plan engaged in competitive bidding for recordkeeping services, the plan's ability to leverage its size to reduce fees, and whether the complaint includes "a sound basis for comparison [or] meaningful benchmark" to show that the "practices of similarly situated fiduciaries" for the same services differed. *Pinnell v. Teva Pharma. USA, Inc.*, No. 19-5738, 2020 WL 1531870, at *3–4 (E.D. Pa. Mar. 31, 2020) (internal quotation omitted).  "A high fee alone does not mandate a conclusion that recordkeeping fees are excessive; rather, fees must be evaluated 'relative to the services rendered.'" *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1132 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021) (quoting *Young v. Gen. Motors Inv. Mgmt. Corp*., 325 F. App'x 31, 33 (2d Cir. 2009)).  Accordingly, allegations that include a meaningful benchmark are those that plead similarly situated plans received the same services for less. *Johnson*, 2021 WL 3417843, at *4.

Here, the Amended Complaint does not sufficiently allege that Defendants breached their duty of prudence by subjecting the Plan to excessive recordkeeping/administrative costs and excessive total plan costs.  First, with respect to recordkeeping costs, the Amended Complaint alleges that the Plan's average recordkeeping fees of $79.76–$124.28 per participant, per year from 2014–2018 reflects a lack of prudence in light of alleged industry-wide fee averages (as cited in a 401k Averages Book) of approximately $35 per participant in 2017 for recordkeeping *and* administration services for much smaller plans.  (Am. Compl. ¶¶ 44–45).  Rather than point to the

fees paid by other specific plans, the Amended Complaint alleges that Defendants should have been able to obtain recordkeeping fees lower than $35 per participant per year with prudent management given the Plan's size and resulting negotiating power by referencing industry-wide fee averages. (*Id.* ¶ 44). However, the asserted $35 average recordkeeping fee that the Amended Complaint alleges Defendants should have been able to obtain is premised on unspecified services provided to other plans with 100 participants and $5 million in assets, without any comparison to the services provided to the Plan at issue in this case.[11] (*Id.* (citing 401k Averages Book (20th ed.))). And while the Amended Complaint alleges some of the recordkeeper's responsibilities with respect to the Plan (*id.* ¶ 37), it does not allege that the Plan should have been able to obtain lower fees considering the Plan's features, and the nature and type of recordkeeping and administrative services provided by the Plan's recordkeeper. Accordingly, without any allegations about the Plan's fees and the services rendered in exchange for those fees in comparison with other plans, the Amended Complaint does not state a plausible claim for breach of fiduciary duty with respect to recordkeeping costs. *Johnson*, 2021 WL 3417843, at *4 (finding that the plaintiffs failed to plausibly allege breach of fiduciary duty regarding defendants' unreasonable recordkeeping fees where the benchmark used was "premised on unspecified recordkeeping services provided by Fidelity to 'other plans of over $1,000,000,000 in assets where Fidelity is the recordkeeper' without any comparison to the services provided to the Plan" by the recordkeeper in the case at hand (quoting *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 214 (D. Mass. 2020)); *Matousek v.*

---

[11]     Plaintiffs also cite to *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018), to argue that other courts have acknowledged that a plan with $3.4 billion in assets and 41,863 active participants should be paying $30 per participant. (Am. Compl. ¶ 44 n.11). They likewise cite to *Sacerdote v. New York Univ.*, No. 16-6284, 2017 WL 3701482, at *9 (S.D.N.Y. Aug. 25, 2017), to assert that the "market rate" for total administrative fees for "jumbo" plans, *i.e.*, those within the top 1%, should be $35 per participant. (Am. Compl. ¶ 44 n.11). However, once again, the Amended Complaint does not make any comparison between the services provided to the Plan in reference to the services rendered by the Plans in either *Cassell* or *Sacerdote*. As such, Plaintiffs' reliance on these cases is unavailing. *Johnson*, 2021 WL 3417843, at *4.

*MidAmerican Energy Co.*, 51 F.4th 274, 279–80 (8th Cir. 2022) (finding that the plaintiffs failed to plausibly allege breach of fiduciary duty regarding defendants' unreasonable recordkeeping fees where plaintiffs relied on industry-wide averages, including the 401k Averages Book "[r]ather than point[ing] to the fees paid by other specific, comparably sized plans").

Second, the Amended Complaint pleads that Defendants caused the Plan to pay excessive fees by reference to the Plan's total plan cost, which encompasses all fees and expenses associated with operating a retirement plan including, recordkeeping and administrative fees, as well as investment management fees. (Am. Compl. ¶ 41 n.8). The Amended Complaint alleges that the Plan's total plan cost, which ranged between at least 0.65% to 0.78% of net assets[12] from 2014–2018, reflects a lack of prudence in light of a 2019 Brightscope/ICI study which indicated that the average total plan cost for a plan with over $1 billion in assets was 0.28% as of 2016. (*Id.* ¶ 42). Third, with respect to administrative costs, the Amended Complaint alleges that the administrative fee component for the Plan was much higher than the average total plan cost for plans "with over $1 billion in assets from the most recent Brightscope/ICI defined contribution plan study." (*Id.* ¶ 46). More specifically, the Amended Complaint pleads that the administrative costs of the Plan *alone* ranged from 0.29% to 0.42% of Plan assets from 2014–2018, while the average total plan cost for plans with over $1 billion dollar in assets amounted to only 0.28% of net assets. (*Id.* ¶ 47). From this disparity, Plaintiffs infer that Defendants failed to act prudently by examining, benchmarking, or comparing the fees of the Plan to other similarly-sized plans. (*Id.* ¶ 48). Rather than point to the fees paid by other specific plans, the Amended Complaint again alleges that

---

[12]   In fact, the Amended Complaint alleges that these total plan cost figures are conservative because the expense ratios of five of the collective trust investment options offered by the Plan were not publicly available and the inclusion of these collective trust options would drive up the total plan cost. (Am. Compl. ¶ 43). Further the Amended Complaint alleges that the total plan cost figures of the Plan are conservative because they assume that the Plan is invested in the least expensive share class for each fund. (*Id.*).

Defendants paid excessive administrative fees and total plan costs based on industry-wide averages from the Brightscope/ICI study.  And, like before, Plaintiffs' allegations are premised on unspecified services provided by other plans included in the Brightscope/ICI study, without any comparison to the services provided to the Plan at issue in this case.  As Defendants point out, Plaintiffs' total plan costs allegations do not consider the services provided to the plans at issue. (Reply at 9–10).  While the Amended Complaint pleads the administrative services that the Plan receives, it does not allege any services provided by other plans included in the Brightscope/ICI study to show that the "practices of similarly situated fiduciaries" differed.  *Sweda*, 923 F.3d at 330–32.  It does not allege that the Plan should have been able to obtain lower fees considering the nature of services provided by the Plan.  Thus, the Amended Complaint does not state a claim for breach of fiduciary duty with respect to excessive total plan costs and administrative fees. *Johnson*, 2021 WL 3417843, at *4; *Perkins v. United Surgical Partners Int'l Inc.*, No. 21-0973, 2022 WL 824839, at *6 (N.D. Tex. Mar. 18, 2022) (granting motion to dismiss as to plaintiffs' excessive administrative fees claim where plaintiff did not plead "that the specific services offered to the Plan and its participants were available from other providers at a lower price").[13]

Further, the fact that the Plan's total plan costs are higher than average does not on its own create an inference that Defendants breached their duty of prudence.  As Plaintiffs allege, total plan costs include investment management fees, as well as administrative and recordkeeping expenses.  (Am. Compl. ¶ 41 n.8).  However, the Amended Complaint has failed to plead any facts showing that the total plan costs from the Brightscope/ICI study come from plans that have

---

[13]     Plaintiffs cite to *Allison v. L Brands, Inc.*, No. 20-6018, 2021 WL 4224729, at *9–10 (S.D. Ohio Sept. 16, 2021) and *In re Biogen, Inc. ERISA Litig.*, No. 20-11325, 2021 WL 3116331, at *8 (D. Mass. July 22, 2021) to argue that Courts have relied on total plan cost data presented in the Brightscope/ICI study in finding that ERISA plaintiffs stated claims of imprudence for excessive fees.  (Opp. Br. at 26).  However, as discussed above, here Plaintiffs have not alleged "specific comparisons" between the fiduciary's choices and available alternatives to show that the "practices of similarly situated fiduciaries" for the "same services" differed.  *Sweda*, 923 F.3d at 330–32.

investment options that are similar to the Plan.  Plaintiffs do not offer any additional context beyond their allegation that the Plan's total plan cost was higher as compared to an average, and as such their allegations are insufficient.  *Rodriguez v. Hy-Vee, Inc.*, No. 22-0072, 2022 WL 16648825, at *8 (S.D. Iowa Oct. 21, 2022).[14]

Plaintiffs' arguments to the contrary are unavailing.  Plaintiffs argue that the allegations in the Amended Complaint regarding excessive fees are materially similar to those credited by this Court in *Berkelhammer*.  (Pl. Supp. Br. at 5–6).  The Court disagrees.  In *Berkelhammer*, this Court allowed the plaintiffs' duty of prudence claim regarding excessive recordkeeping fees to proceed as pled.  *Berkelhammer*, 2022 WL 3593975, at *5–6.  However, there the plaintiffs alleged that the maximum reasonable recordkeeping fee should have been $25 to $30 per participant—considering "the Plan's features, the nature and type of recordkeeping and administrative services provided by the Plan's recordkeeper, the number of Plan participants and the recordkeeping market."  *Id.* at *5.  And to demonstrate that "smaller plans" paid $25 to $30 per participant, the plaintiffs in *Berkelhammer* provided a table which compared the plan's fees to specific smaller plans such as Nike, New Albertson's, and Fidelity.  *Id.*  Further the plaintiffs in *Berkelhammer* also alleged that recordkeeping fees increased inexplicably—though services did not change—during a time that fees in the market either remained the same or decreased.  *Id.*  And the plaintiffs alleged that the defendants failed to conduct competitive bidding for the plan's recordkeeping services from prior to 2014 until at least 2018.  *Id.*  In contrast here, the Amended Complaint does not point to the fees paid by other specific plans but alleges that Defendants subjected the Plan to

---

[14]     The Amended Complaint alleges that the total plan cost "permits a straight 'apples-to-apples' comparison of the total fees incurred by different plans, as service providers can and do manipulate price reporting by shifting or re-directing their fees to investment management expenses to minimize the billing for recordkeeping and other service components, and vice versa."  (Am. Compl. ¶ 41 n.8).  However, as stated, Plaintiffs do not offer any additional context to show that the total plan costs from the Brightscope/ICI study come from plans that have services or investment options similar to the Plan.  As such their allegations regarding the total plan costs are insufficient.

excessive recordkeeping/administrative costs and excessive total plan costs based on publications of industry averages that do not account for the services provided by the Plan's recordkeeper. Nor do Plaintiffs allege that the Plan should have been able to bargain for lower fees considering "the Plan's features, the nature and type of recordkeeping and administrative services provided by the Plan's recordkeeper, the number of Plan participants and the recordkeeping market." *Id.* Nor do Plaintiffs here allege that recordkeeping fees increased inexplicably—though services did not change—during a time that fees in the market either remained the same or decreased, or that the Defendants failed to conduct competitive bidding for the plan's recordkeeping services. As such, the argument that the allegations in the Amended Complaint are materially similar to those credited by the Court in *Berkelhammer* is unavailing.

Accordingly, McCaffree's claim for breach of the fiduciary duty of prudence regarding excessive recordkeeping/administrative costs and excessive total plan costs is dismissed. However, it is dismissed *without prejudice*. The Court cannot rule out the possibility that McCaffree might plausibly allege that Defendants subjected the Plan to excessive recordkeeping/administrative costs and excessive total plan costs.

### ii.    Breach of Duty of Loyalty

A breach of fiduciary duty claim may also be premised on a breach of the duty of loyalty. The Amended Complaint alleges that Defendants breached their duty of loyalty by failing to adequately monitor the Plan's recordkeeper, Voya Financial, despite its clear conflicts of interest. (Am. Compl. ¶¶ 7 & 50–56). Defendants argue that the Amended Complaint has failed to state a claim for breach of the duty of loyalty because it does not allege that Defendants acted to improperly benefit someone other than Plan participants and the Amended Complaint's allegations of self-interest are insufficient. (Mov. Br. at 36). McCaffree opposes, arguing that the Amended

Complaint's allegations are just the kind that support a plausible inference that Defendants failed to make decisions for the interests of participants.  (Opp. Br. at 36).  For the reasons set forth below, the Court agrees with Defendants.

ERISA imposes a duty of loyalty.  Specifically, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A)(i)–(ii).  In other words, the fiduciary must act with "'an eye single' toward beneficiaries' interests." *Pegram*, 530 U.S. at 235 (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)).  When evaluating a duty of loyalty claim, "courts look for allegations suggesting that the fiduciary made decisions benefitting itself or a third party." *McGowan v. Barnabas Health, Inc.*, No. 20-13119, 2021 WL 1399870, at *7 (D.N.J. Apr. 13, 2021).  And "the Court must take into account the fiduciary's subjective motivation in making a decision for the plan." *Johnson*, 2021 WL 3417843, at *5 (quoting *Moitoso*, 451 F. Supp. 3d at 204).  However, "a plaintiff does not adequately plead a claim simply by making a conclusory assertion that a defendant failed to act 'for the exclusive purpose of' providing benefits to participants and defraying reasonable administration expenses; instead, to implicate the concept of 'loyalty,' a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else." *Sacerdote*, 2017 WL 3701482, at *5.  Thus, a plaintiff must do more than identify a potential conflict of interest because "an act which has the effect of furthering the interests of a third party is fundamentally different from an act taken with that as a goal." *Id.* at *6.

Reviewed according to these principles, the Amended Complaint fails to plead a breach of a duty of loyalty.  The Amended Complaint's allegations are principally based on Defendants

purportedly giving Voya "carte blanche" in designing the Plan's investment menu so as to permit Voya to extract the most fees possible without considering Voya's conflicts of interest. (Am. Compl. ¶ 50). More specifically, the Amended Complaint alleges that a significant portion of the Plan has been invested in Voya-managed investment options, which are proprietary funds. (*Id.* ¶¶ 51–52). Plaintiffs further allege that many of the Voya proprietary funds are "funds of funds" which do not directly invest in securities. (*Id.* ¶ 53). Instead, a Voya investment manager selects underlying funds managed by a sub-advisor—which can be another Voya entity—through which it invests in securities. (*Id.*). Accordingly, the Amended Complaint claims that the Plan is required to pay multiple layers of fees to Voya as fund manager and to the sub-advisor of the underlying fund, which may be another Voya entity. (*Id.*). Further, as stated in the Amended Complaint, to the extent Voya is able to select a sub-advisor with a low sub-advisory fee, Voya can adjust the revenue it derives from the fund and ultimately the Plan. (*Id.* ¶ 54). The Amended Complaint states that this arrangement poses a conflict of interest because Voya's affiliates are sub-advisors in its investment options and Voya will receive more revenue when it selects a Voya affiliated fund rather than an unaffiliated fund. (*Id.* ¶ 55). Additionally, Plaintiffs claim Defendants' retention of Voya entities, including Voya Investment Advisors, followed by Voya Retirement Advisors, LLC, as investment advisors, poses a conflict of interest, since these entities have a clear financial incentive to direct participants to Voya proprietary investment options. (*Id.* ¶ 56). As pled, these allegations do not include facts suggesting that Defendants engaged Voya Financial as recordkeeper, or included Voya's proprietary investments in the Plan, for the purpose of—rather than merely having the effect of—benefiting Voya. *Sacerdote*, 2017 WL 3701482, at *5 (finding that plaintiffs failed to raise a duty of loyalty claim "based on NYU purportedly allowing TIAA-CREF and Vanguard to include their proprietary investments in the Plans without considering

potential conflicts, which favored TIAA-CREF's and Vanguard's own interests through the provision of allegedly bundled services"); *Brown v. Daikin Am., Inc.,* No. 18-11091, 2021 WL 1758898, at *5 (S.D.N.Y. May 4, 2021) ("Plaintiffs attempt to *infer* a conflict of interest from the fact that John Hancock held dual roles with respect to the Plan.  But . . . that fact alone does not demonstrate that [Defendant] . . . [acted] towards its own benefit or even John Hancock's.").  In other words, the Amended Complaint has failed to do more than identify a conflict of interest. *Johnson*, 2021 WL 3417843, at *5.[15]

McCaffree's arguments to the contrary are unavailing.  McCaffree argues that the Amended Complaint pleads inappropriate favoritism of Voya by Defendants because Defendants included the Voya Target Solution Collective Trusts in the Plan, even though they were not widely utilized by other retirement plans.  (Pl. Supp. Br. at 11 (citing Am. Compl. ¶ 65)).  Further, McCaffree points to allegations in the Amended Complaint that show that, despite the Plan's status as a majority investor in the Voya Target Solution Collective Trusts, Defendants neglected to negotiate with Voya to reduce the investment management fees associated with the funds.  (*Id.* (citing Am. Compl. ¶¶ 66–67)).  Given that Voya was also the recordkeeper of the Plan and was receiving excessive fees in that role, the Amended Complaint alleges that Defendants had other

---

[15]        In support of its breach of the duty of loyalty claim, plaintiffs point to *Braden*, 588 F.3d 585, to argue that "ERISA's duty of loyalty may require a fiduciary to disclose latent conflicts of interest which affect participants." (Opp. Br. at 37; Pl. Supp. Br. at 12 n.4).  In *Braden*, plaintiff alleged that the defendants had breached their duty of loyalty by failing to disclose to participants complete material information about the plan's funds and the fact that the funds were selected to benefit the trustee at the expense of participants.  *Braden*, 588 F.3d at 596.  The *Braden* court found that the plaintiff plausibly alleged a breach of the duty of loyalty where plaintiff alleged facts that the defendants had failed to disclose material information regarding the funds' performance and fees.  This included allegations that the mutual fund companies whose funds were included in the plan shared with the plan's trustee portions of the fees they collected from participants' investments (of concealed amounts) to the trustee as kickbacks in exchange for inclusion of their funds in the plan.  *Braden*, 588 F.3d at 590 & 598–600.  These kickbacks made by the mutual fund companies to the plan trustee along with the fiduciaries' concealment thereof, plausibly supported concerns regarding "latent conflicts of interest which affect participants' ability to make informed decisions about their benefits" since each fund was allegedly "selected for inclusion in the Plan because it made payments to the trustee, and not because it was a prudent investment." *Id.* at 599–600.  Here, Plaintiffs have not pled similar facts but rather have alleged that Defendants breached their duty of loyalty by purportedly allowing Voya to include their proprietary investments in the Plan without considering potential conflicts.  As such, their reliance on *Braden* is unavailing.

motivations besides the interests of the Plan.  (Am. Compl. ¶ 67).  These allegations, however, amount to a claim that Defendants followed an imprudent process—both in including the Voya Target Solution Collective Trusts in the Plan and neglecting to negotiate with Voya to reduce investment management fees—not that Defendants acted disloyally.  *Sacerdote*, 2017 WL 3701482, at *6; *Silva v. Evonik Corp.*, No. 20-2202, 2020 WL 12574912, at *8 (D.N.J. Dec. 30, 2020) ("[A] plaintiff may not simply 'recast' a claim of imprudence as an independent claim of disloyalty without additional facts suggesting an improper motive or financial benefit.").

Further, McCaffree again argues that the allegations in the Amended Complaint are materially similar to those credited by the Court in *Berkelhammer*.  (Pl. Supp. Br. at 10).  The Court again disagrees.  In *Berkelhammer*, the Court allowed the plaintiffs' duty of loyalty claim to proceed as pled based on allegations of the exorbitant fees paid to Voya, the sheer consistency at which the defendants benefited Voya, and the mutually beneficial business relationship between Defendants and Voya.  *Berkelhammer*, 2022 WL 3593975, at *11.  For example, the Court noted allegations that indicated that the timing of some benefits conferred upon Voya was suspect, namely that Voya's investment products were added to the plan only after Voya became recordkeeper, and some of those products were already poor performers.  *Id.* at *10.  Further the plaintiffs alleged that the defendants had an incentive to steer business in Voya's direction to receive other business opportunities from Voya.  *Id.*  More specifically, the Court drew this inference based on allegations in the complaint that the defendants retained Voya's services and provided Voya with plan participant data in exchange for Voya marketing and selling the defendants' business.  *Id.*  No such allegations are present here.  Instead, Plaintiffs assert disloyalty because the Voya proprietary funds were "funds of funds" and because certain Voya-related entities managed some of the underlying funds, such that Voya could allegedly control the revenue

it received.  (Am. Compl. ¶¶ 50–56).  There are no allegations that the timing of some benefits conferred upon Voya was suspect or that Defendants had an incentive to steer business in Voya's direction to receive other business opportunities from Voya.  As such, McCaffree's argument that the allegations in the Amended Complaint are materially similar to those credited by the Court in *Berkelhammer* is unavailing.

Accordingly, McCaffree's claim for breach of the fiduciary duty of loyalty is dismissed.  However, it is dismissed *without prejudice*.  The Court cannot rule out the possibility that McCaffree might plausibly allege that Defendants acted *for the purpose* of benefiting Voya.

**D.     Failure to Act in Accordance with the Plan**

Finally, Defendants argue that the Amended Complaint pleads nothing to support its claim in Count I, which asserts that Defendants violated 29 U.S.C. § 1104(a)(1)(D).  (Mov. Br. at 37).  Plaintiffs do not address Defendants' argument.  (*See generally* Opp. Br. & Pl. Supp. Br.).  For the reasons set forth below, the Court agrees with Defendants.

Pursuant to 29 U.S.C. § 1104(a)(1)(D), fiduciaries are required to discharge their duties with respect to a plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]."  Thus, "[t]his allegation must be couched in terms of the language of the Plan Document."  *Erhart v. Plasterers Loc. 8 Annuity Fund*, No. 19-6812, 2019 WL 6318310, at *4 (D.N.J. Nov. 26, 2019).

Here, the Amended Complaint fails to identify any Plan provision that Defendants failed to follow.  (*See generally* Am. Compl.).  The only provisions of the Plan the Amended Complaint references is "the process by which participating employers may adopt and amend the Plan and the process by which participating employers may terminate their participation in the Plan, as well as the rights associated with each process."  (*Id.* ¶¶ 24–26).  These allegations, however, do nothing

to establish that Defendants' behavior contradicted the Plan document.  Because the Amended Complaint has merely recited the statutory language here, it has not made sufficient allegations to survive a motion to dismiss, and thus any claim under 29 U.S.C. § 1104(a)(1)(D) is dismissed. *Erhart*, 2019 WL 6318310, at \*4.  However, it is dismissed *without prejudice*.

In sum, the Court dismisses *without prejudice* all of MFC's claims for lack of standing.  The Court dismisses *without prejudice* McCaffree's claim in Count I that Defendants breached their duty of prudence by permitting objectively imprudent investments for lack of standing.  The Court also dismisses *without prejudice* McCaffree's claims in Count I that Defendants breached their duties of prudence and loyalty by (i) subjecting the Plan to excessive total plan costs and excessive recordkeeping/administrative costs; and (ii) failing to oversee the Plan recordkeeper and engaging a recordkeeper with a conflict of interest for failure to state a claim.  Additionally, the Court dismisses *without prejudice* McCaffree's claim in Count I under 29 U.S.C. § 1104(a)(1)(D) for failure to state a claim.  Finally, Count II is dismissed *without prejudice*. [16]

## IV.     CONCLUSION

Based on the foregoing, Defendants' motion (D.E. No. 101) is **GRANTED**, and Plaintiffs' Amended Complaint is dismissed *without prejudice*.[17]  An appropriate Order follows.

Dated: March 31, 2023

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[16]     With respect to Count II, which is pled in the alternative, the Amended Complaint alleges that Defendants committed a breach of trust through their knowing participation in the breach.  (Am. Compl. ¶¶ 97–99).  A claim for breach of trust is "generally interchangeable with breach of fiduciary duty[,]" except that it can be asserted against non-fiduciaries.  *Johnson*, 2022 WL 973581, at \*8 (internal quotations and citation omitted).  "Courts have generally failed to see any distinction when evaluating breach-of-trust claims versus breach-of-fiduciary-duty claims other than the fiduciary-versus-non-fiduciary consideration."  *Id.* (citing *In re Omnicom ERISA Litigation*, No. 20-4141, 2021 WL 3292487, at \*17 (S.D.N.Y. Aug. 2, 2021)).  Thus, the same analysis applies to a fiduciary duty and breach-of-trust claim.  *Id.*  Because none of the claims in Count I will proceed, Count II will also be dismissed *without prejudice*. *Id; see also Garthwait*, 2021 WL 4441939, at \*11.

[17]     Because the Amended Complaint is dismissed *without prejudice*, the Court will not consider Defendants' remaining arguments.  (Mov. Br. at 38–39).